Reginald P. Bodeux, Stephen L. Kennedy, St. Charles, for respondent.

CRIST, Judge.

Ex-husband (husband) appeals from a judgment dissolving the parties' three-year,

**Montie B. JONES, Appellant,**

v.

**Clinton MANESS, et al., Respondents.**

**No. 45434.**

Missouri Court of Appeals,
Eastern District, Division Four.

March 8, 1983.

Robert E. Edwards, Troy, for appellant.

Paul F. Niedner, St. Charles, William B. England, Joseph L. Leritz, St. Louis, Leonard J. Frankel, Clayton, for respondents.

SMITH, Judge.

Plaintiff appeals from the entry of summary judgment against him on each count of his two count petition for "slander [1] and invasion of privacy." We reverse as to Count I and affirm as to Count II.

Defendants are members of the Board of Education of the Wentzville School District or employees of that District. Plaintiff's operative allegations of Count I were:

"4. That on or about the 23rd day of May, 1979, the Defendants and each of them did falsely and maliciously *utter and state* that Plaintiff . . . possessed a

---

1. The petition actually sounds in both slander and libel. We view it from the allegations contained therein, not the title given it.

narcotic drug ... and had attempted to poison Michael Coury and Jackie Giessinger by giving it to [them] to eat.

5. That the aforesaid defamatory statement was published to the reporters and employees of the St. Charles Messenger-Tribune, to the Channel 4 Television Newsteam and to the public at large by the *use of a published agenda.*" (Emphasis supplied)

The operative allegations of Count II were:

"2. That the Defendants did falsely, maliciously and wantonly and knowingly *state* to employees and reporters of the St. Charles Messenger-Tribune, the Channel 4 Newsteam and the Public at large that the Plaintiff was a dope fiend and drug peddler; that Plaintiff was unfit to be a student at Wentzville High School." [2] (Emphasis supplied.)

Defendants conducted extensive discovery, including depositions and interrogatories. Discovery indicated that the allegations of Count II were based largely on supposition that because the media reports reflected plaintiff's involvement in an incident in which L.S.D. was put into an omelet and served to an assistant principal, the media must have received such information from defendants. The media reports are not a part of the record. Count I was based upon the posting on school premises of an agenda listing the names of students to be interviewed by the school board during its investigation of the omelet incident. Plaintiff's name was on that agenda, or so he testified on deposition. The agenda is also not part of the record so we, and the trial court, are unaware of its exact content.

Defendants filed their motions for summary judgment. In support each defendant filed an affidavit which, except for identity of the affiant, were identical. The operative language of each was:

"2. [Defendant's name] states that on or about the 23rd day of May, 1979, nor at any other time did she [he] *state* that

the plaintiff Montie B. Jones, possessed a narcotic drug, to-wit: 'an LSD star' and had attempted to poison Michael Coury and Jackie Giessinger by giving it to Michael Coury and Jackie Giessinger to eat.

3. [Defendant's name] further states that at no time did she [he] *state* to employees and reporters of the St. Charles Messenger Tribune, the Channel 4 News Team, and the public at large that Montie B. Jones was a dope fiend and drug peddler or that Montie B. Jones was unfit to be a student at Wentzville High School." (Emphasis supplied.)

In response to the motion, plaintiff filed an affidavit of his father. That affidavit addressed the facts set out in paragraph 3 of defendants' affidavits only by asserting that articles had appeared in the media concerning the attempted poisoning which included his son's name and that relatives, friends and acquaintances had heard that affiant's son was selling dope and tried to poison employees of the school district. The affidavit contained no facts directly refuting the statements in paragraph 3 of defendants' affidavits. As to paragraph 2 of those affidavits the father stated that he had been at a hearing on May 30, 1979, where all of the defendants except Coury and Lane were present and, "[t]hey put up a list of the names of students who they accused of putting drugs into an omelet and then giving it to some employees of the Wentzville school District .... My son Monte [sic] B. Jones' name was on the list put on the door of the room where the May 30, 1979 hearing was held ...."

■■■ The principles to be applied in determining the propriety of summary judgment have been frequently stated. Such judgment may only be rendered where it is made manifest by the documents on file, including pleadings, depositions, admissions and affidavits, that there is no genuine issue of material fact. Rule 74.04(c). A genuine issue of material fact exists when-

---

**2.** Count II incorporated paragraph 4 of Count I by reference. It did not incorporate paragraph

5.

ever there is the slightest doubt as to the facts. *Edwards v. Heidelbaugh,* 574 S.W.2d 25 (Mo.App.1978) [1–4]. The burden is upon the movants, here defendants, to show by unassailable proof that there is no genuine issue of fact. *Hurwitz v. Kohm,* 516 S.W.2d 33 (Mo.App.1974) [2–5]. When, however, a party to litigation is confronted with a proper motion for summary judgment, he may not rely upon his pleadings of ultimate facts or denial of those facts, or merely assert that he will have evidence at trial which disclose issues of fact. Rather he must come forward with affidavits or evidence showing the existence of material facts in dispute. When facts are set forth in affidavits in support of the motion and there is no verified denial the facts so stated are deemed admitted for the purpose of summary judgment. *Hurwitz v. Kohm, supra,* [6, 7]. Where, however, the admitted facts fail to negative a material issue raised by the pleadings summary judgment is not proper. *Dietrich v. Pulitzer Publishing Company,* 422 S.W.2d 330 (Mo.1968) [1–3]; *Hurwitz v. Kohm, supra,* [11]; *Sherman v. AAA Credit Service Corporation,* 514 S.W.2d 642 (Mo.App.1974) [4].

■ We turn to plaintiff's petition. Count I premises defendants' liability on their having uttered and stated certain matters concerning plaintiff. Defendants' affidavits controverted that they stated those matters. But "utter" is not necessarily a synonym of "state." It has a legal meaning of "to put or send into circulation," "to publish or put forth." Black's Law Dictionary 1387 (rev. 5th ed. 1979). We need not resolve whether plaintiff utilized the term with that meaning. When paragraph 4 is read with paragraph 5 it is apparent that the method by which defendants allegedly communicated the defamation was through the use of a published

agenda. Nothing in defendants' affidavits controverts that allegation of plaintiff's petition. Nor do the affidavits challenge the defamatory nature of that agenda.[3] Defendants' defamation of plaintiff through the use of a published agenda is a material fact in dispute.

■ While Count II incorporates by reference the word "utter" the method by which the defamation was alleged to have been transmitted was through a statement. That allegation is specifically controverted by defendants' affidavits. Plaintiff's father's affidavit does not refute that aspect of defendants' affidavits. It is therefore deemed admitted that defendants did not make the statements attributed to them in Count II of the petition. As to Count II there is no material fact in dispute.

Judgment on Count II is affirmed. Judgment on Count I is reversed and cause remanded for further proceedings.

PUDLOWSKI, C.J., and KELLY, J., concur.

---

3. As mentioned before, that document is not a part of the record. Whether it is defamatory or not is not before us and we make no determination of that question. The father's affidavit indicates it accused plaintiff of criminal activity. There are indications in the record that it consisted only of a list of students to be interviewed by the Board during the investigation and the time of those interviews. Plaintiff's

petition alleged defamation *per se,* not *per quod.* The content of the document will determine whether it constitutes defamation *per se.* See *Walker v. Kansas City Star Co.,* 406 S.W.2d 44 (Mo.1966) [1, 2]; *Childers v. Nesselroad,* 357 Mo. 1218, 212 S.W.2d 727 (Mo.1948) [1]; *Porterfield v. Burger King Corp.,* 540 F.2d 398 (8th Cir.1976) [5].