Maud M. MORLEY, Plaintiff-Appellant,

v.

Michael P. WARD, M.D.,
Defendant-Respondent.

No. 51552.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 10, 1987.

Motion for Rehearing and/or Transfer
Denied March 11, 1987.

Application to Transfer Denied
April 14, 1987.

Arthur G. Muegler, Jr., St. Louis, for plaintiff-appellant.

Robert G. Burridge, Donald Paul Myre, St. Louis, for defendant-respondent.

PUDLOWSKI, Presiding Judge.

Plaintiff Maud M. Morley (Maud) appeals from the entry of summary judgment for defendant Dr. Michael P. Ward (Ward). Maud contends that the trial court erred in finding that there was no genuine issue as to any material fact as Ward's affidavit was, for numerous reasons, insufficient. Additionally, Maud argues that there was no need for her to oppose Ward's affidavit with a counter-affidavit as Maud had verified her original petition which placed all issues in controversy. Finally, Maud argues that the trial court erred in entering summary judgment as Ward's motion was in effect a motion for judgment on the pleadings which also should have been denied. We affirm.

The trial court will render summary judgment "if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." Rule 74.04(c). Proof by the prevailing party must be unassailable. Rule 74.04(h). On review, we must scrutinize the record in the light most favorable to the party against whom judgment is rendered. *Bakewell v. Missouri State Employees' Retirement*, 668 S.W.2d 224, 226 (Mo.App.1984).

Maud filed a five count petition in the Circuit Court of the City of St. Louis against Ward, a city resident, and eight other physicians, all of whom reside in St. Louis County and Christian Hospital Northeast-Northwest in north St. Louis County. In a thirty-five page verified petition she made numerous allegations against the defendants concerning the treatment of her husband Frank, who first entered the hospital in September 1982. In sum, she alleged that Ward, a diagnostic radiologist, ordered x-rays of her husband and misinterpreted them, failing to diagnose an aortic aneurysm. Upon Frank's readmission in April 1984, Ward discovered the error. The other physicians then operated, which allegedly led to the husband's death in September 1984. Maud alleged several acts of malpractice and the failure to secure an informed consent for the operation. Additionally, Maud alleged that the physicians and hospital were engaged in a joint venture, that they "covered up" the affair and that they, either intentionally or negligently, deprived Frank of adequate life support.

Ward moved for a summary judgment, submitting his personal affidavit along with x-ray reports from 1982 and 1984. His affidavit attested to Ward's professional qualifications as a physician and radiologist. He specifically denied ordering the 1982 x-ray, reading it or misinterpreting it

as, at that time, he did not work at Christian Hospital. In April 1984, he interpreted new x-rays of Frank and discovered the condition complained of in Maud's petition. This caused him, for the first time, to view and interpret the 1982 x-rays. He then made proper distribution of his findings to the treating physician.

In his affidavit Ward opined as to the duties of a diagnostic radiologist and stated that he was not responsible for directly reporting his findings to the patient. He stated that a diagnostic radiologist generally does not treat patients and that he was not present at Frank's operation. He denied any medical relationship to Frank except for interpreting his x-rays mentioned above. Finally, he denied knowledge of or participation in any cover up or post operative denial of life support.

Maud did not submit any opposing affidavits. The trial court then entered summary judgment for Ward. As a result, the trial court dismissed the cause of action without prejudice against the remaining defendants as there was no longer any defendant who resided in the City of St. Louis. This dismissal was not appealed.

■ Ward asserts that Maud never objected to his affidavit and accompanying documents and that Maud waived her right to appellate review of the alleged trial court errors. Maud denies failing to object and states that since, by "long standing custom and practice," summary judgment hearings are not conducted on the record, there is no transcript and Ward cannot establish Maud's waiver. Maud further posits that it became incumbent upon Ward

to supplement the record on appeal to substantiate this waiver argument. We disagree. As can be gleaned from the legal file, there is no record that Maud ever, either by pre-hearing or post-hearing motion or at the hearing itself, objected to Ward's affidavits or supporting documents. By failing to move to strike Ward's affidavit Maud did not preserve the alleged error in admitting them. *Gal v. Bishop,* 674 S.W.2d 680, 684 (Mo.App.1984).[1] Therefore we review Maud's petition and trial record under Rule 74.04(e) to determine whether the trial court was in error as a matter of law in finding no supporting affidavit in opposition to defendant's motion for summary judgment and that no surviving material issues of fact existed.

This brings us to the second point relied on. Maud never filed an opposing affidavit. It is elementary that "[w]hen a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by this Rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Rule 74.04(e). If Maud failed to respond, it is deemed that she has admitted the facts of Ward's affidavit. *Scaife v. Kansas City Power and Light Co.,* 637 S.W.2d 731, 733 (Mo.App. 1982).

■ Maud contends that as she verified her petition, this qualifies as the opposing affidavit. We disagree. To give effect to

1. Prior to oral argument Maud's counsel filed a Motion to Supplement Record on Appeal. This motion requested that an affidavit by Maud's counsel, which stated that at the summary judgment hearing he did object to the form and admissibility of Ward's affidavit, be allowed in order to supplement the appellate record. In response, Ward's counsel submitted his own affidavit which vigorously denied the substance of Maud's counsel's affidavit. In particular, Ward's counsel's affidavit stated that at the hearing, Maud's counsel did not make any objection to the form or admissibility of the affidavit, but, instead, argued only on the merits of the summary judgment motion and the validity of a verified petition as a controverting affidavit.

It is obvious that there is no way for us to decide which affidavit accurately reflected the proceedings below. But what is also obvious is that the trial court did not have the benefit of the documents, which clearly raise the evidentiary issues, presented to us. This court in *Carondelet Savings and Loan Association v. Boyer,* 595 S.W.2d 744 (Mo.App.1980) denied a motion to supplement the record on appeal when there was "no indication that these documents were ever presented to, or considered by, the trial court." *Id.* at 746. It is incumbent on appellant to preserve trial error. Appellant's affidavit does not fall within the ambit of Rule 81.12(e) allowing supplementations to the record and the motion, therefore, is denied.

Maud's contention would mean that a plaintiff could immunize a cause of action from summary judgment by the process of verification. This, however, is not the law. First, Rule 74.04(e) requires that the adverse party *respond* by affidavit or as otherwise provided in the rule. Maud's verified petition is not a response to Ward's affidavit since, by definition, a response comes after its stimulus. Clearly, the rule contemplates a subsequent act by the adverse party. Second, a verified pleading will not be awarded the probative force of an affidavit unless it meets the requirements of Rule 74.04(e). The rule requires that the content of the pleading must be asserted to be on the personal knowledge of the pleader, must set forth facts that would be admissible in evidence, and show affirmatively that the pleader is competent to testify to the matters pleaded. *Commerce Bank of Fenton v. B.P.J. Enterprises,* 659 S.W.2d 615, 618 (Mo.App.1983). Maud is not competent to give expert testimony as to whether Ward's acts as a radiologist were negligent. Further, despite Maud's swearing to the contrary, it is doubtful that the facts she speaks of are actually based on her personal knowledge. Like Ward's affidavit, Maud's petition does not state that it is based on her personal knowledge. Unlike Ward's affidavit, however, it does not show affirmatively that of what she speaks is based on personal knowledge. Evidently she did not personally know who interpreted the 1982 x-rays. Nor does it seem likely the defendants invited her to sit in on their conferences when they planned "the Cover up" she says existed. Further, from the record before us, we find that the appellant never presented to the trial court that her verified petition was to be used as her response to respondent's affidavit and that the trial court erred in failing to admit it as such.[2] Maud's petition does not constitute an opposing affidavit to Ward's which revived any material issue of fact. As a result, her failure to oppose Ward's affidavit resulted in her admitting its facts and the trial court did not commit error.

We now address Maud's first point relied on which consists of numerous sub-points. First she states that her petition on its face states a cause of action. We do not need to address this point as this case involves a summary judgment under Rule 74.04 and not a dismissal for failure to state a cause of action as provided for in Rule 55.27. Appellant's sub-point is denied.

■ Next Maud attacks Ward's affidavit for being insufficient as to form. She states that the affidavit is fatally defective as there is no declaration that the facts are true according to Ward's personal knowledge. Ward's affidavit avers that it is "correct to the best of his knowledge, information and belief." We find that this absence of a magic phrase immaterial. "Rule 74.04(e) only requires that affidavits be made on personal knowledge; it does not by its terms require that the affidavit contain a specific statement saying that the affidavit is made on personal knowledge." *Jones v. Pinkerton's Inc.,* 700 S.W.2d 456, 460–461 (Mo.App.1985).

■ Maud attacks the admissibility of the two x-ray reports submitted with Ward's affidavit, saying that they were not sworn and certified. Rule 74.04(e) requires that copies of all papers referred to in the affidavit be attached to the affidavit and be sworn or certified. In *Brown v. Upjohn Co.,* 655 S.W.2d 758 (Mo.App.1983) this court reversed an entry of summary judgment where a drug manufacturer accompanied his motion with an unverified "exhibit" purporting to be information sent by the manufacturer to physicians. Noteworthy, however, was the fact that defendant there did not submit any affidavit to accompany the motion, which also was unverified. We held that this unverified "exhibit" could not substitute for an affidavit and reversed the entry of summary judgment. *Id.* at 759. In the case *sub judice,* the material aspects of the reports, the facts that another radiologist and not Ward interpreted the 1982 x-rays and that Ward properly interpreted the 1984 x-rays, are already referred to in

---

**2.** Rule 55.03 does not require a verified petition. One may question the use of a verified petition

especially since it seems to be the pea of discomfort in this case *sub judice.*

the verified affidavit. Therefore, these reports are redundancies. They do not substitute for the affidavit, and the error in admitting them, whether objected to or not, is non-prejudicial.

Maud next attempts to undermine the substance of Ward's affidavit. Specifically, she says Ward was not competent to testify as to most of the matters he relates, that he states conclusions and not material facts, and that the affidavit contains inadmissible hearsay. She dissects the affidavit, removing the allegedly objectionable portions leaving a skeleton which would fail to unassailably entitle Ward to a summary judgment.

■ In order to determine whether Maud's allegation that Ward's affidavit is fatally conclusory and inadmissible, we must analyze her cause of action. It posits several theories to keep Ward in the lawsuit. The first is that he ordered and misinterpreted the 1982 x-rays, thus allowing Frank's condition to worsen instead of being treated. Ward squarely asserts facts denying such. Maud accepts this denial as factual. But she would have us disallow Ward from giving the expert opinion that he had no duty regarding that x-ray until he first viewed it in April 1984. In effect, Maud is asserting that Ward cannot give an expert opinion that it is not customary medical practice for a diagnostic radiologist to review x-rays taken by other physicians before the new radiologist began service at the hospital and compare his findings with those of others for possible errors. We disagree and hold that Ward's affidavit is sufficient regarding liability based on the 1982 x-ray.

The gist of Maud's second theory revolves around the second x-ray and the consequences of the operation which occurred afterwards. Ward gives his expert opinion that he properly interpreted the April 1984 x-ray. While Maud believes this also inadmissible, it is not an issue since Maud never did allege that Ward's interpretation was faulty.

■ Maud's third theory involves Ward's alleged participation in and knowledge of, as the petition terms it, "the Cover-up" by the hospital and the physician defendants of the wrongs done to Frank. As a corollary, Maud also alleges that Ward should have directly informed the Morleys of Frank's condition instead of reporting it to Frank's treating physician. Ward vehemently denied knowledge of participating in "the Cover-up" and opined that a diagnostic radiologist "does not generally report findings directly to the patient." Maud asserts that Ward's denial of both knowledge of or participation in "the Cover-up" is inadmissible.[3] Again, she offers the argument that Ward's expert opinion is inadmissible. Neither sub-point has merit.

Maud next tries to ensnare Ward by saying that he is liable for the negligent performance of the operation upon Frank. Ward denies that he was present at any operation performed on Frank (This denial is conceded to be admissible). She nonetheless holds him responsible under the theory of joint venture for the alleged numerous errors performed by the treating physician. Ward denies any joint venture.

Maud's theory is based on *Crump v. Piper*, 425 S.W.2d 924 (Mo.1968). There, a neurosurgeon and an orthopedic surgeon operated on plaintiff's back. Each assisted the other in performing their specialized task. Near the end of the operation when the orthopedic surgeon began to close the wound, the neurosurgeon departed the operating room. At that time, the orthopedic surgeon left a small sponge in the plaintiff's body. Despite the neurosurgeon's absence at the time of the negligent closing of the wound, the court held that plaintiff had made a submissible case against both physicians.

■ Maud attacks Ward's affidavit as asserting a legal conclusion by his denial of any joint venture as described above. The problem with her argument is that Ward's affidavit goes far beyond a mere denial.

---

**3.** Maud's version of the facts admissible in Ward's affidavit excises this denial. She does not say why, however, except to generally aver

that all the excised portions are either incompetent, conclusory, hearsay or irrelevant.

In it, he describes what actions he undertook regarding Frank. In essence, he said he properly read the 1984 x-ray and distributed his report to the treating physicians. He specifically denied rendering any treatment to Mr. Morley and never participated in any operation. Facts showing greater interaction between physicians have been held not sufficient for joint venture liability by one physician for the negligence of another. *Sall v. Ellfeldt*, 662 S.W.2d 517, 525 (Mo.App.1983).

Maud's last sub-point contends that Ward's affidavit did not factually controvert by unassailable proof the numerous material facts alleged in the petition. It is true that if an affidavit and other proof does not serve to negate a material issue raised by the pleading then summary judgment cannot stand. *Jones v. Maness*, 648 S.W.2d 629, 632 (Mo.App.1983). We are unsure if Maud's contention necessarily rests on the exclusion of the supposed inadmissible portions of Ward's affidavit. If Ward's affidavit failed to negate the material issues raised in the pleadings because the negating facts were inadmissible, then, for the reasons discussed above, as these portions were in fact admissible, Ward did succeed in negating them. On the other hand, if Maud is saying that, accepting all that Ward said as admissible, his affidavit still failed to negate the material issues, then we must review the petition and affidavit.[4]

Maud protests that Ward's affidavit failed to negate eight negligent acts. We have reviewed the alleged acts and find that Ward's affidavit, by his expert testimony regarding the duties of a diagnostic radiologist, and by his denial of acts sufficient to constitute a joint venture successfully and clearly negated all but one of Maud's allegations of negligence. The allegation of negligence was properly ascribed to the *treating physicians*, which Ward was not.

However, that allegation requires further inquiry. Maud alleged in her petition that Ward failed to discover various clamps, sponges etc. which, she claims, were left in her husband during the operation. Ward denied any personal activity regarding Frank except for the x-rays taken before the operation.[5] In her *brief*, Maud now alleges that Ward x-rayed her husband post-operatively. Thus, we could have grounds to reverse summary judgment since a material issue could have been controverted. But this court does not receive or consider new evidence. *Spires v. Lawless*, 493 S.W.2d 65, 73–74 (Mo.App. 1973). If it is true that Ward failed to discover, via post operation x-rays that he ordered and interpreted, items left in Frank, it is a matter that should have been presented in an opposing affidavit, as here

---

**4.** Maud, in her first brief, states: "Stripped of the foregoing nonadmissible testimony (i.e. 'lined out' items) it is obvious that *all* the material facts related to respondent's alleged post April 1, 1984 breach of his duty of care toward Frank were not addressed, controverted or otherwise testified to." (Emphasis in original text). It seems that, here, Maud is adopting the narrower theory, that there was no negation because the "stripped" affidavit was inadequate for this purpose. However, in her reply brief, Maud states that Ward's affidavit "even if deemed to be competent on certain matters, wholly failed to deny or controvert *any* of the numerous material factual allegations." (Emphasis in original text). A reply brief is not to be used to expand the basis of error alleged against the trial court. *LaRose v. Casey*, 570 S.W.2d 746, 749 (Mo.App.1978). Interestingly, this new argument of Maud's is lodged in point relied on II which, in the first brief only discussed the probative value of a verified petition

as a substitute for the counter affidavit required by Rule 74.04. Re-enforcing our view that Maud is expanding the basis of error is the fact that the text of point relied on II differs remarkably in Maud's two briefs. Nonetheless, we will review in the light of the more expanded argument.

**5.** Ward's affidavit states that "at no time was Frank Morley under his care until and beyond the interpretation of x-rays correctly and fully done . . . on April 1, 1984." Maud reads this as saying that Ward did have responsibility for Frank after April 1, and therefore there is no denial by Ward of any allegation of failure to discover the negligent acts performed on Frank. We disagree and see it as a statement that, except for reading the x-rays on April 1, 1984, Ward never undertook any other act towards Frank: in other words, no care until April 1, 1984 and no care beyond April 1, 1984.

before discussed, which Maud neglected to submit to the trial court.[6]

We need not address Maud's third point because, as we held above, the motion for summary judgment was not, in effect, a motion for judgment on the pleadings. The trial court's entry of summary judgment is affirmed.

CRANDALL and KAROHL, JJ., concur.

6. Further, Maud's allegation in the brief that Ward post-operatively x-rayed Frank is not sup-ported by any citation to the record which would substantiate the allegation.