J. Danny BAILEY, Plaintiff-Appellant,

v.

MISSOURI–KANSAS–TEXAS RAIL-
ROAD, Defendant-Respondent.

No. 52371.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 23, 1987.

Fritz G. Faerber, M. Melinda Sanderson, Rick Rosen, Belleville, for plaintiff-appellant.

Henry D. Menghini, St. Louis, for defendant-respondent.

REINHARD, Judge.

Plaintiff appeals following entry of a summary judgment against him on his Federal Employers' Liability Act claim. We affirm.[1]

At the time of his injury plaintiff was an employee of B & R Transfer Co. B & R and Katy Transportation Co. had a contract under which B & R ramped and deramped

---

1. Plaintiff's Federal Employers' Liability Act claim was count I of his amended petition. The summary judgment did not affect count II, a common law negligence claim. The trial court designated the summary judgment as final for purposes of appeal. Rule 81.06. By motion, defendant challenges the appealability of the summary judgment order. We conclude the judgment was final for purposes of appeal, see Speck v. Union Electric Co., 731 S.W.2d 16 (Mo. banc 1987); therefore, we deny defendant's motion to dismiss the appeal.

"piggyback" trailers to and from Missouri-Kansas-Texas Railroad (MKT) freight cars, loaded and unloaded trailer cargo, and transported trailers to and from local cargo shippers and receivers. Katy Transportation is a wholly-owned subsidiary of the sole defendant, MKT.

Plaintiff based his count I claim on 45 U.S.C. §§ 51–60 (1982), the Federal Employers' Liability Act (FELA).[2] In his petition he alleged that in September 1981, while working on MKT's premises at 420 Gimblin Road in St. Louis, he was injured while "lifting a bridge plate on a piggyback ramp directed and controlled by [MKT] by and through its agents, servants and employees" and, at the time, he was working "under the direction and control of [MKT] and under the right of [MKT] to direct, supervise and control the work, thereby making him an employee of [MKT]." Plaintiff made no allegation concerning the relationship between MKT and Katy Transportation.

MKT moved for summary judgment, contending:

> Neither MKT Railroad nor any of its officers, agents, or employees had the right to direct, supervise, or control the details of plaintiff's work at or near the time of his alleged accident on September 29, 1981 or at any other time.... Rather, pursuant to contract between B & R Transfer, an independent contractor, and Katy Transportation, a wholly owned subsidiary of MKT railroad, B & R Transfer had the sole right to direct and control the details of plaintiff's work.

In its motion, MKT also stated that neither it, nor its officers, agents, or employees did, in fact, direct, supervise, or control the details of plaintiff's work at or near the time of his injury.

Accompanying MKT's motion was a memorandum of law; an affidavit from William L. Somers, MKT's general claims attorney, in which Somers averred that he had personal knowledge that plaintiff "was never hired, paid, compensated or employed by [MKT]" and that MKT did not have the right to, and, in fact, did not direct, supervise, or control the details of plaintiff's work; a copy of the contract between B & R and Katy Transportation; and sworn depositions of plaintiff, B & R Transfer owner Ron St. Arbor, and Charles W. Yeargian, Katy Transportation's assistant terminal manager since early 1984 on MKT's premises where plaintiff was injured.

Plaintiff filed a memorandum in opposition to defendant's motion. The memorandum was signed by plaintiff's counsel and was not in affidavit form. The memorandum stated basic law about requirements for a summary judgment, the law pertaining to an employee-employer relationship for FELA purposes, and the evidence in the record which plaintiff contended was sufficient to overcome a motion for summary judgment on the issue of employment.

Following a hearing, the trial court granted defendant's motion for summary judgment on the FELA claim "[a]fter considering argument of counsel, memorandum of parties, and deposition of Bill Foster taken in Danback v. MKT," a cause then pending.[3] Plaintiff now appeals the summary judgment order.

Applicable principles of law governing appellate review of a summary judgment are well established. A summary judgment is appropriate only where documents on file, including pleadings, depositions, admissions, and affidavits, show there is no genuine issue of material fact and that any party is entitled to summary judgment as a matter of law. Rule 74.04(c); *Edwards v.*

---

**2.** Prior to bringing his action against MKT, plaintiff filed a claim for worker's compensation against B & R Transfer and received benefits. Plaintiff's receipt of worker's compensation benefits from B & R does not necessarily preclude his FELA action against MKT. *See DeShong v. Seaboard Coast Line Railroad Co.,* 737 F.2d 1520 (11th Cir.1984); *Vanskike v. ACF Industries, Inc.,* 665 F.2d 188, 199–200 n. 9 (8th Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct.

1632, 71 L.Ed.2d 867 (1982); *Thate v. Texas & Pacific Railway Co.,* 595 S.W.2d 591, 595–96 (Tex.Civ.App.1980).

**3.** Foster was Katy Transportation's terminal manager at the MKT facility at the time plaintiff was injured. His deposition apparently was before the trial court by agreement of the parties.

*Heidelbaugh,* 574 S.W.2d 25, 27 (Mo.App. 1978). A genuine issue of material fact exists if there is the slightest doubt about the facts. *Edwards,* 574 S.W.2d at 27. The appellate court must scrutinize the record in the light most favorable to the party opposing summary judgment and give that party the benefit of every doubt. *Id.* at 26–27. The burden is on the movant to show by unassailable proof that there is no genuine issue of fact. Rule 74.04(h); *Edwards,* 574 S.W.2d at 27. A party opposing summary judgment may not rely upon pleadings of ultimate facts or an assertion that there will be evidence at trial which will disclose issues of fact but, rather, must come forward with affidavits or evidence showing the existence of a genuine issue of material fact. Rule 74.04(e); *Jones v. Maness,* 648 S.W.2d 629, 632 (Mo. App.1983).

■ To establish a case of liability against a railroad under the FELA, a claimant must show, among other things, that he was an employee of the railroad at the time of his injury. *Phelps v. Missouri-Kansas-Texas Railroad Co.,* 438 S.W.2d 181, 184 (Mo.1968), *cert. dismissed,* 394 U.S. 955, 89 S.Ct. 1298, 22 L.Ed.2d 494 (1969). In *Kelley v. Southern Pacific Co.,* 419 U.S. 318, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974), the Court set forth the following three methods by which a plaintiff can show an employer-employee relationship for FELA purposes:

Under common-law principles, there are basically three methods by which a plaintiff can establish his "employment" with a rail carrier for FELA purposes even while he is nominally employed by another. First, the employee could be serving as the borrowed servant of the railroad at the time of his injury. See Restatement (Second) of Agency § 227; *Linstead v. Chesapeake & Ohio R. Co.,* 276 U.S. 28, 48 S.Ct. 241, 72 L.Ed. 453 (1928). Second, he could be deemed to be acting for two masters simultaneously [a dual servant]. See Restatement § 226; *Williams v. Pennsylvania R. Co.,* 313 F.2d 203, 209 (CA2 1963). Finally, he could be a subservant of a company that

was in turn a servant of the railroad. See Restatement § 5(2); *Schroeder v. Pennsylvania R. Co.,* 397 F.2d 452 (CA7 1968).

419 U.S. at 324, 95 S.Ct. at 476. The primary factor in the determination of a borrowed servant or a dual servant relationship is the right of the alleged employer to direct and control the worker in the detailed performance of his work at the time of his injury. *Turpin v. Chicago, Burlington & Quincy Railroad Co.,* 403 S.W.2d 233, 240 (Mo. banc), *cert. denied,* 384 U.S. 1003, 86 S.Ct. 1925, 16 L.Ed.2d 1015 (1966); *Vinyard v. Missouri Pacific Railroad,* 632 S.W.2d 272, 275 (Mo.App. 1982). Under the subservant theory, in which the worker is a servant of a company that, in turn, is a servant of the railroad, the "control or right to control" test also must be met; a showing of agency is not sufficient. *Kelley,* 419 U.S. at 326, 95 S.Ct. at 477.

The existence of an employment relationship is a question of fact and must be decided on the peculiar facts of each case. *Baker v. Texas and Pacific Railway Co.,* 359 U.S. 227, 228, 79 S.Ct. 664, 665, 3 L.Ed.2d 756 (1959). The issue is one for a jury unless reasonable persons could not reach differing conclusions on the effect of the evidence and its inferences. *Id.; Turpin,* 403 S.W.2d at 241.

■ Plaintiff does not specifically indicate under which one or more of the three theories noted in *Kelley* he purports to be an employee of MKT; however, we conclude that the trial court was correct in determining there is no genuine issue of material fact about the existence of an employment relationship under any of the three theories, and the entry of summary judgment was proper.

The most recent reported Missouri opinion reviewing a FELA employment relationship issue is our case of *Vinyard,* 632 S.W.2d 272, in which the plaintiff acknowledged he was employed by the Missouri Pacific Trucking Co., a wholly-owned subsidiary of the railroad, but also contended he was employed by the railroad for FELA purposes. The trial court vacated a jury

verdict in favor of plaintiff and entered judgment for defendant. On appeal, we reversed, holding there was sufficient evidence the terminal manager, a railroad employee, directed, supervised, and controlled the details of plaintiff's work thereby making plaintiff an employee of the railroad under the FELA.

From a comparison of the record in this case to the facts set forth in *Vinyard*, we believe there exists a factual issue about whether plaintiff was, in addition to being an employee of B & R Transfer, also an employee of Katy Transportation. Employment by Katy Transportation, however, does not make plaintiff an employee of MKT, and, in his memorandum to the trial court, his briefs on appeal, and in oral argument before us, plaintiff has failed to adequately confront the crucial relationship between MKT and Katy Transportation.

Plaintiff argues that "[e]ven though part of the control over B & R Transfer personnel came through the MKT's wholly-owned subsidiary, Katy Transportation, that fact does not absolve the MKT from liability." Plaintiff points out that not only is Katy Transportation a wholly-owned subsidiary of MKT, Katy Transportation was previously a department of MKT, at the time of plaintiff's injury Foster was the only Katy Transportation employee on the premises and his duty was "to oversee the operations of B & R Transfer," Katy Transportation owns no tools, and B & R does the work formerly performed by Katy Transportation. Plaintiff then states that an "attempt to avoid liability by holding the subsidiary responsible" would violate 45 U.S.C. § 55 which provides that "[a]ny contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void. . . ." 45 U.S.C. § 55 (1982).

It has been held that 45 U.S.C. § 55 voids "all devices, and only those devices, whose actual *purpose or intent* is to enable a carrier to exempt itself from liability. . . ." *Selser v. Pacific Motor Trucking Co.*, 770 F.2d 551, 554 (5th Cir.1985) (emphasis in original). When a court considers whether to disregard the separate entities of parent corporation and subsidiary, the test is "whether or not the arrangement involved is being used for a proper *purpose.*" *Phelps*, 438 S.W.2d at 186 (emphasis added). In most cases, the railroad's purpose must be shown by circumstantial evidence. *See Phelps*, 438 S.W.2d at 186.

Plaintiff brought forth no evidence that would create a genuine issue of material fact about whether MKT's purpose or intent in creating and maintaining Katy Transportation as a wholly-owned subsidiary was to exempt itself from FELA liability. At the discovery stage of this lawsuit, plaintiff appears to have assumed that MKT and Katy Transportation are one entity. He offered no evidence, be it affidavit, deposition, or interrogatories, in an attempt to show MKT's purpose or intent, choosing rather to rely on his allegations, his memorandum in opposition to the summary judgment motion, and the depositions referred to above. Thus we have only the circumstantial evidence in the record to enable us to examine MKT's purpose.

The evidence about the relationship between MKT and Katy Transportation is similar to evidence concerning the corporate relationships in *Turpin*, 403 S.W.2d 233, and *Phelps*, 438 S.W.2d 181. In *Turpin*, the plaintiff was an employee of a truck line that was a wholly-owned subsidiary of defendant railroad. After the jury found for the plaintiff on his FELA claim, the trial court entered judgment for the defendant pursuant to an after-trial motion on the ground that the evidence was insufficient to establish that plaintiff was an employee of defendant. In affirming the trial court, the supreme court concluded that the creation of the truck line by the railroad was not a device to avoid FELA liability, stating:

In the absence of fraud, connivance or an undue domination, the law recognizes the separate entities of corporations, even though one owns the stock of the other; and this principle is applicable in solving questions of employment, as here. Nor

is one, for that reason, the alter ego of the other.

*Turpin,* 403 S.W.2d at 239. The court found no evidence indicative of a purpose to avoid FELA liability, *Id.* at 239–40, and concluded that the railroad's subsidiary truck line was "an independent contractor, that nothing was done to impair [the independent contractor] relationship, and that plaintiff remained solely the employee of the Truck Lines." *Id.* at 242.

Two years later the supreme court decided *Phelps,* 438 S.W.2d 181, a case bearing even greater factual similarity than does *Turpin* to the case now before us. Plaintiff Phelps was a truck driver for Co-Ordinated Transportation Co., owned entirely by the defendant, MKT railroad. Certain aspects of the relationship among plaintiff Phelps, Co-Ordinated, and MKT included the following:

Under the contract between Co-Ordinated and MKT, Co-Ordinated executed the wishes of MKT, did not hold itself out to the public, did not solicit business, and was devoted entirely to MKT freight business to and from stations on the MKT line.... Co-Ordinated and MKT ... share some of the same officers and directors. They did not receive any compensation from Co-Ordinated.... Co-Ordinated drivers used the railroad private rail telephone. Co-Ordinated handled MKT mail and considerable MKT property on the [less-than-carload] freight run, as well as [less-than-carload] freight. No separate billing was made for that service, the rate for all carriage being per truck mile. MKT performed certain accounting services for Co-Ordinated and Co-Ordinated payroll checks were signed by one who was also an officer in MKT.

....

Co-Ordinated had a rent-free office in the [MKT building] in Dallas, Texas, and Co-Ordinated drivers had a room in the MKT freight station in Parsons, Kansas.

*Id.* at 183–84.

The court concluded from the evidence that Co-Ordinated was a legitimate corporation, the purposes of Co-Ordinated and MKT were proper, and nothing had been done to destroy the independent contractor relationship. *Phelps,* 438 S.W.2d at 186–87.

Based upon the supreme court's opinions in *Turpin* and *Phelps,* we conclude there is nothing in the evidence to cause a court to disregard the separate entities of MKT and Katy Transportation. There is no evidence, direct or circumstantial, that the purpose behind Katy Transportation is to shield MKT from FELA liability.

Under the subservant theory, plaintiff could establish an employment relationship by showing that he is a servant of a servant of MKT, i.e., either B & R Transfer is a servant of MKT or he is a servant of Katy Transportation and Katy is a servant of MKT. There is nothing in the record to indicate that MKT, Katy Transportation, and B & R are anything but separate distinct entities; the "control or right to control" test of *Kelley* is not met. 419 U.S. at 326, 95 S.Ct. at 477. There is no genuine issue of fact concerning whether B & R Transfer or Katy Transportation is a subservant of MKT.

Plaintiff also contends there is evidence sufficient to create doubt on the issue of direct control by MKT over him. In his memorandum to the trial court and his briefs he points to the following:

Plaintiff was performing work to benefit the regular business of MKT and he was injured while working with MKT-owned equipment, including railroad cars and bridge plates; MKT owns the premises where plaintiff was injured and owns and maintains the concrete ramps and supplies salt to de-ice them; MKT owns, or is accountable for, the railroad cars loaded and unloaded by plaintiff and supplies the air to lock their brakes; once B & R personnel "signed for a trailer," it became [MKT's] responsibility; an MKT employee conducted a seminar in 1980 for carmen and yardmen, attended by plaintiff, to familiarize them with a new type of hitch and to refresh them on the safe use of the old hitches; B & R's work schedule was dependent on MKT's train schedule, and MKT sent a copy of its timetable directly to B & R; MKT salesmen had the right to deter-

mine which cargoes were to be given priority; MKT set the speed limits that B & R Transfer truck drivers had to observe on the premises; MKT provided an office to B & R Transfer rent free and supplied utility service, with the exception of a telephone, to B & R; plaintiff performed repairs on MKT equipment; an MKT carman inspected plaintiff's work and ordered him to correct deficiencies; plaintiff inspected flat cars for missing parts, checked air lines, checked for excessive wear on hitch plates, and had the authority to "bad order" MKT flat cars.

Based on the standard of review of a summary judgment, the law on the establishment of an employer-employee relationship as enunciated in *Kelley,* 419 U.S. 318, 95 S.Ct. 472, *Phelps,* 438 S.W.2d 181, *Turpin,* 403 S.W.2d 233, and *Vinyard,* 632 S.W.2d 272; and our examination of the entire record, we find no support for plaintiff's conclusion that there is evidence that MKT directly controlled him, or had the right to directly control him, in the day-to-day performance of his work. Much of the evidence he points to, even if true, would not be evidence of FELA employment. Some of his allegations, which on the surface might appear to create an issue of fact about employment, are nothing more than conclusions that have no foundation in the record.

Finding no issue of fact on plaintiff's purported status as an employee of MKT, we affirm the trial court's order of summary judgment.

SMITH, P.J., and DOWD, J., concur.