Sara Westbrook HARRELL, Appellant,

v.

TOTAL HEALTH CARE, INC., Respondent.

No. 71610.

Supreme Court of Missouri, En Banc.

Dec. 12, 1989.

J. Michael Vaughan, Michael D. Strohbehn, J. Bret Armatas, Kansas City, for appellant.

William Lee Yocum, Mark A. Lynch, Kansas City, for respondent.

Ronald R. McMillin, Lori J. Levine, Gerald M. Sill, Missouri Hosp. Ass'n, Jefferson City, for amici curiae Missouri Hosp. Ass'n and Missouri Hosp. Plan.

BLACKMAR, Chief Justice.

The plaintiff filed an action alleging damages originating in malpractice during surgery performed upon her on March 23, 1983. She advises that the case has been disposed of as to all of the defendants except Total Health Care, Inc.

Total was incorporated December 1, 1982, as a not-for-profit corporation under chapter 354, RSMo, which provided for the incorporation of "Health Service Corporations." We consider the case on the basis of the statutes in effect at the time of the injury and have no need to inquire into the effect of the extensive amendments to chapter 354, which did not become effective until September 28, 1983.

Total derives its resources from dues paid by members, of which the plaintiff was one. It maintains a list of primary care physicians who have agreed by contract with it that they will provide service to Total's members at specified rates, to be paid by Total and not by the members seeking treatment. A member must select a primary care physician from this list and must first consult that physician about medical problems. If the primary care physician determines that the services of a specialist are required, the physician may refer the member to the specialist. We will assume for present purposes that Total will pay the cost of specialist services only if the specialist is on Total's approved list of specialists.

The plaintiff consulted a primary care physician, who referred her to an osteopathic urological surgeon on Total's approved list of specialists. She seeks to impose liability on Total, first, on a claim of "corporate liability" and, second, on the assertion that Total was negligent in the

selection of the specialist who performed surgery upon her. We find it unnecessary for present purposes to discuss the merits of either of these claims.

The trial court entered summary judgment for Total and took the steps necessary to make that judgment final for purposes of appeal.[1] The court of appeals initially affirmed but then granted a rehearing and handed down a carefully considered and helpful opinion, expressing its conclusions on most of the issues involved but concluding that it could not resolve the case because of the appellant's constitutional challenge to § 354.125, RSMo 1978 (Mo.Const. Art. V, § 3). We take the case as on initial appeal (Art. V, § 10), and affirm, concluding that § 354.125 operates to exempt Total from liability of the kind sought to be asserted and that the statute is not constitutionally infirm.

## I. Exemption

Section 354.125, RSMo 1978, reads as follows:

A health services corporation shall not be liable for injuries resulting from neglect, misfeasance, malfeasance or malpractice on the part of any person, organization, agency or corporation rendering health services to the health services corporation's members and beneficiaries.

The nature of a "Health Services Corporation" is explicated in § 354.010(4) and § 354.025, RSMo 1978. To incorporate under those statutes, a Health Services Corporation had to be a not-for-profit corporation. It could either provide health care services or make reimbursement for services provided by others. It is agreed that Total did not provide services itself but simply reimbursed physicians on its approved list for services furnished to its members.

■ The plaintiff argues that Total has at all times been a "Health Maintenance Organization" (HMO) rather than a "Health Services Corporation" and that

there was no statutory purpose of granting any kind of an exemption from liability to HMO's. Missouri law did not recognize the Health Maintenance Organization as a form of business organization until after the plaintiff's claim had accrued. The HMO, initially, was a conception of federal law. Even though Total's certificate of authority, issued by the Division of Insurance, uses the phrase "Health Maintenance Organization," the certificate expressly refers to compliance with chapter 354 and states in the body that Total is established as a "Health Service Corporation." We see no reason why an HMO may not also be a Health Services Corporation under chapter 354. We repeat, out of an abundance of caution, that we do not consider the effect of the 1983 statutory amendments on Total's status or on this plaintiff's claim.

■ The plaintiff suggests that the Division of Insurance considered Total to be simply an HMO and did not intend to "grant" it immunity as provided in § 354.125. Such immunity as a Health Service Corporation has is conferred by law and not by administrative fiat. The Division of Insurance has no authority to add to or to subtract from the law emanating from the general assembly and no authority to express a legally significant opinion as to how the law is to be construed or applied in civil litigation. *State ex rel. Neese v. IGF Insurance Co.*, 706 S.W.2d 856 (Mo. banc 1986); *Metro Auto Auction v. Director of Revenue*, 707 S.W.2d 397 (Mo. banc 1986).

■ It is next contended that this action is not one for "neglect, misfeasance, malfeasance or malpractice on the part of any person ... rendering health services to the health services corporation's members and beneficiaries." The action, it is said, is an action against Total grounded on its negligence in the selection of the surgeon who treated the plaintiff, and who is alleged to be demonstrably incompetent. The plaintiff suggests that Total had a duty to use due care in the selection of physicians, in-

---

1. Inasmuch as the case has been disposed as to the other defendants, no question of finality remains.

cluding specialists, and also that Total warranted the competence of the physicians it contracted with.

This argument, if accepted, would render the immunity of § 354.125 of little use to Health Services Corporations that operate as Total does by reimbursing the physician providers, in contrast to those that provide services through their own employees. Nothing in the statute supports the distinction the plaintiff would draw. We do not believe that the legislature had any purpose of effecting a substantial discrimination between the different kinds of Health Services Corporations.

The purpose of the statutes authorizing this kind of corporation is to sanction one method of combatting the cost of health care. Just as the ancient Chinese are reputed to have paid their doctors while they remained well, a person may elect to pay fixed dues in advance so that medical services may be available without additional cost when they are needed. The legislature well might feel that these arrangements were in the public interest and that those organizations that do not operate for profit should not be burdened by the additional cost of malpractice litigation.

The plaintiff points to § 354.115, RSMo 1978, which provides internal review procedures for grievances against health service corporations. She argues, that by recognizing the availability of other actions, the legislature did not intend to confer immunity for claims such as her present one. Section 354.125, however, is specific as to claims originating in malpractice and prevails over the general language of § 354.115.

The plaintiff's claim necessarily requires a showing of medical malpractice. We do not believe that the exemption is lost simply because the plaintiff must establish additional elements. The legislature well might have considered that one in the position of this plaintiff has an adequate remedy against the persons actually guilty of malpractice, who are licensed physicians, and does not need an additional source of recompense from a not-for-profit corpora-tion. It is not our office to raise any question about the wisdom of their choice.

## II. The Constitutional Issue

The plaintiff argues that she cannot be denied a right of action against Total for the damage she claims and that § 354.125 is in violation of several federal and state constitutional provisions to the extent that it does this.

In judging constitutional challenges it is important for us to expound the purpose the legislature might have had in enacting § 354.125. People are concerned both about the cost and the unpredictability of medical expenses. A plan such as Total offered would allow a person to fix the cost of physicians' services. The legislature might easily perceive that the costs of a plan would be substantially increased if the Health Services Organization were to be subject to claims originating in malpractice, that the cost of these claims would necessarily be shared by other plan members, and that malpractice liability might threaten the solvency of the plan. These considerations demonstrate a proper public purpose in the legislation that must be taken into account in considering the several constitutional challenges.

### a. *Open Courts*

■ Article I, § 14 of the Missouri Constitution reads as follows:

That the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay.

The plaintiff argues that she has been denied a remedy for a right, citing *Strahler v. St. Luke's Hospital*, 706 S.W.2d 7 (Mo. banc 1986) and *State ex rel. Cardinal Glennon Memorial Hospital v. Gaertner*, 583 S.W.2d 107 (Mo. banc 1979).

The cited cases do not support the claim. Both deal solely with procedures. In *Strahler* the Court held that the legislature could not impose a limitation on the pursuit of a legal right by a minor who presumably was incapable of pursuing that right. In

*Cardinal Glennon* the Court struck down a procedure for compulsory but nonbinding arbitration, which might operate to delay the jury trial to which the parties were entitled. These cases furnish no authority whatsoever for limiting the legislature's authority to design the framework of the substantive law. The right of access means simply the right to pursue in the courts the causes of action the substantive law recognizes.

The plaintiff also cites cases from other states. These are appropriate because quite a few state constitutions contain language indistinguishable from our Art. I, § 14. But the cases do not support the claims made for them and some appear to be out of harmony with Missouri doctrine.

*Oien v. City of Sioux Falls,* 393 N.W.2d 286 (S.D.1986), appears to hold that the legislature cannot extend the scope of sovereign immunity. We have consistently held that our legislature has the authority to determine the agencies and political subdivisions that enjoy sovereign immunity. *Winston v. Reorganized School District R–2,* 636 S.W.2d 324 (Mo. banc 1982). *State ex rel. Trimble v. Ryan,* 745 S.W.2d 672 (Mo. banc 1988). We have also held that public hospital districts are not liable for malpractice.[2]

*Neely v. St. Francis Hospital,* 192 Kan. 716, 391 P.2d 155 (1964), would appear to limit the state's authority to distinguish between charitable corporations and other corporations with regard to liability to garnishment process. *Noel v. Menninger Foundation,* 175 Kan. 751, 267 P.2d 934 (1954), holds that the state cannot exempt charitable and nonprofit corporations from tort liability. These cases are also out of line with Missouri jurisprudence. At the time of the most recent enactment of Art. I, § 14, our state held that charitable corporations were not liable for torts of their agents. *Krueger v. Schmiechen,* 364 Mo. 568, 264 S.W.2d 311 (1954), citing numerous pre–1945 cases. We then abolished charita-

ble immunity. *Abernathy v. Sisters of St. Mary's,* 446 S.W.2d 599 (Mo. banc 1969); *Garnier v. St. Andrew Presbyterian Church of St. Louis,* 446 S.W.2d 607 (Mo. banc 1969), but certainly this holding is not etched in stone and beyond the power of the legislature to change.

In *Horner v. David Distributing Co.,* 599 S.W.2d 100, 102 (Mo.App.1980), the court said of Art. I, § 14:

> This section was never intended to create rights but to protect citizens in enforcing rights recognized by law. *State ex rel. National Refining Co. v. Seehorn,* 344 Mo. 547, 127 S.W.2d 418, 424 (1939); *Renfrow v. Gojohn,* 600 S.W.2d 77 (Mo. App.W.D.1980). Also see *Schulte v. Missionaries of La Salette Corp. of Mo.,* 352 S.W.2d 636, 641 (Mo.1961). This constitutional provision is of no aid to plaintiffs unless their petition alleges a claim recognized by law.

Our legislature has frequently enacted immunity statutes, limiting rights of action which the common law recognizes. *See, e.g.,* § 537.053, RSMo 1986 (dram shop law); § 188.130, RSMo 1986 (wrongful life statute).[3]

Section 354.125, furthermore, does not deny the plaintiff a remedy for the wrong done to her. She has her right of action against the negligent surgeon. The statute simply limits her access to an additional pocket. In so doing, it serves a proper legislative purpose. We know of no case holding that the legislature may not determine which persons and corporations are liable for the consequences of medical malpractice. The statute does not violate Art. I, § 14.

#### b. *Equal Protection*

■ It is suggested that § 354.125 violates the equal protection clause of the Fourteenth Amendment by discriminating in favor of Health Services Corporations, such as Total, and against "nonprofit hospitals and health maintenance organiza-

---

**2.** *State ex rel. New Liberty Hosp. Dist. v. Pratt,* 687 S.W.2d 184 (Mo. banc 1985).

**3.** Respondents cite in their brief several examples of statutory grants of immunity including: § 332.021, RSMo 1986; § 335.031, RSMo 1986; § 537.037, RSMo 1986.

tions." No substantial and pertinent authority is cited. The brief deals in generalities.

We do not agree with the contention that the plaintiff is a member of a "suspect class," so as to require "strict scrutiny" of any discrimination. Suspect classifications are those based on considerations such as race, religion, or similar considerations.[4] Nor is the plaintiff shown to be a member of a "quasi-suspect class," even if this concept, suggested by the plaintiff, is a viable concept. The equal protection clause must be applied on the "rational basis" analysis, which is normal for equal protection cases not involving suspect classes.[5]

We have already mentioned the circumstances that tend to justify the legislature's action. These include the availability of an action against the faulty physician and the same concern against expense that underlies the authorization of Health Services Corporations. These corporations are distinctly different from hospitals, and the legislature is not obliged to treat them in the same manner.

It goes without saying, furthermore, that any discrimination that was introduced by the 1983 amendments, which took effect after the date the plaintiff's claim arose, cannot help the plaintiff in her challenge to the statute.

We do not discuss the plaintiff's equal protection citations in depth because none seems to have very much application to the case before us. In *State Board of Registration v. Giffin*, 651 S.W.2d 475 (Mo. banc 1983), we found no unconstitutional discrimination in allowing graduates of foreign medical schools to use the designation "M.D.," while denying that authority to graduates of schools of osteopathic medicine. *Richardson v. Carnegie Library*

*Restaurant, Inc.*, 107 N.M. 688, 763 P.2d 1153 (1989), is one of several cases from other jurisdictions discussing the constitutional validity of "caps" on certain damage awards. It is not in point here, and very probably out of line with Missouri's authority to the extent that it suggests that there may be no distinction among different classes of injured parties based on the nature of their claims. We have consistently sanctioned a shorter statute of limitations for malpractice cases than that which obtains in other cases. *Laughlin v. Forgrave*, 432 S.W.2d 308 (Mo. banc 1968).

No more persuasive is the attempt at an "equal protection" type of argument under the Missouri Constitution by branding § 354.125 a "local or special law." The law applies to all Health Service Corporations organized under chapter 354 alike. It does not fail because it does not also apply to hospitals.

### c. *Other Constitutional Arguments*

The plaintiff makes essentially the same arguments in support of a claim that the statute violates the due process clauses found in the state and federal constitutions. No authority is cited to support this phase of the claim, and we perceive no due process violation.

The argument that the statute results in an unconstitutional grant of immunity by an administrative agency is not well taken because the immunity is conferred by law.

The general assembly's authority is plenary, except when express constitutional provisions intervene.[6] Statutes are presumed to be constitutional; one claiming otherwise has a heavy burden.[7] The plaintiff has not overcome that presumption. The statute operates in an area in which

---

**4.** "[A] suspect class is one 'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.'" *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976); citing *San Antonio School District v. Rodriguez*, 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973).

**5.** *State Board of Registration for the Healing Arts v. Giffen*, 651 S.W.2d 475 (Mo. banc 1983).

**6.** *State ex inf. Dalton ex rel. Holekamp v. Holekamp Lumber Co.*, 340 S.W.2d 678 (Mo. banc 1960).

**7.** *Blue Cross Hosp. Service, Inc. v. Frappier*, 681 S.W.2d 925 (Mo. banc 1984).

the legislature may balance competing interests. Her arguments reduce to the suggestion that the statute is unwise or unfair. This argument must be addressed to the legislature.

The judgment is affirmed.

ROBERTSON, J., MORGAN, Senior Judge and CRIST, Special Judge, concur.

RENDLEN, J., concurs in result.

BILLINGS, J., concurs in Part I and dissents in Part II.

HIGGINS, J., concurs in part and dissents in part in separate opinion filed.

COVINGTON, J., not sitting.

HOLSTEIN, J., not participating because not a member of the Court when the case was submitted.

HIGGINS, Judge, concurring in part and dissenting in part.

I concur in part I of the majority opinion because I find no case stated by plaintiff against this defendant. I dissent from part II of the opinion because I find no reason to reach the constitutional challenge.