Linda L. MAHONEY and Richard L. Mahoney, Plaintiffs–Appellants,

v.

DOERHOFF SURGICAL SERVICES, INC., Allen Doerhoff, M.D., et al., Defendants–Respondents.

No. 72745.

Supreme Court of Missouri, En Banc.

April 9, 1991.

Rehearing Denied May 3, 1991.

Jerome Wallach, Michael F. Dandino, St. Louis, for plaintiffs-appellants.

Ronald B. McMillin, P. Pierre Dominique, Jefferson City, Hamp Ford, Susan Ford Robertson, Columbia, for defendants-respondents.

CHARLES SHANGLER, Special Judge.

The plaintiffs Linda Mahoney and Richard Mahoney, husband and wife, brought an action for medical malpractice against defendants Doerhoff Surgical Services, Inc., a professional corporation, and Allen Doerhoff, M.D., and Carl Doerhoff, M.D., Missouri Osteopathic Foundation, doing business as Still Osteopathic Hospital, and St. Mary's Hospital. The suit was brought on September 22, 1989. After the lapse of 90 days, the several defendants moved to dismiss the plaintiff's action for failure to comply with § 538.225, RSMo 1986. That section provides that no later than ninety days after the filing of a petition against a health care provider for damages for personal injury, the plaintiff or attorney shall file an affidavit that states that the plaintiff has the written opinion of a legally qualified health provider that the defendant "failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances" and that such failure caused or contributed to cause the damages claimed in the petition. That section empowers the court, upon motion, to dismiss the action against the defendant for want of timely compliance by the plaintiff.[1]

The plaintiffs neglected the affidavit provisions of *§ 538.225*, and after ninety days the motions of the health care provider defendants to dismiss for noncompliance were sustained. Their action was dismissed without prejudice, and the plaintiffs appeal the dismissal to this Court on contentions of the invalidity of the statute. The appeal asserts that *§ 538.225* infringes the rights of trial by jury [*Mo. Const., art. I, § 22(a)*] and access to the courts [*Mo. Const., art. I, § 14*], violates the principle of separation of powers [*Mo. Const., art. II, § 1*], and denies the plaintiffs the equal

---

**1.** The full text of *§ 538.225* is rendered in the Appendix to this opinion.

protection of the laws and due process of law [*U.S. Const. Amend. XIV, § 1; Mo. Const., art. I, §§ 2, 10*].

## I. THE JURISDICTIONAL ISSUES

■ The defendants question that the dismissal without prejudice entered by the trial court was a final judgment from which an appeal can be taken, and hence the jurisdiction of this Court to adjudicate the complaints of error. They rest on the holding of the court of appeals in *Mullins v. Miller*, 796 S.W.2d 119 (Mo.App.1990), that a dismissal without prejudice under *§ 538.225.5* for failure to comply with the affidavit requirement of the statute is not a final judgment for the purpose of appeal. *Mullins* draws that conclusion of law from the premises of *Rule 67.03* that a "dismissal without prejudice permits the party to bring another civil action for the same cause" and from the general principle that, "[w]ith exceptions ... a dismissal without prejudice is not an adjudication on the merits."

■ A dismissal without prejudice may nevertheless operate to preclude the party from bringing another action for the same cause, and may nevertheless be *res judicata* of what the judgment actually decided. *Douglas v. Thompson*, 286 S.W.2d 833, 834 (Mo.1956). When the effect of the order is to dismiss the plaintiff's action and not the pleading merely, then the judgment entered is final and appealable. *White v. Sievers*, 359 Mo. 145, 221 S.W.2d 118, 122 (banc 1949). The dismissal without prejudice for failure of the petition to state a claim, when the party elects not to plead further, amounts to a determination that the plaintiff has no action. In such a case, the judgment of dismissal—albeit without prejudice—amounts to an adjudication on the merits and may be appealed. *Hasemeier v. Smith*, 361 S.W.2d 697, 699 (Mo. banc 1962); *Nicholson v. Nicholson*, 685 S.W.2d 588, 589 (Mo.App.1985). This train of exceptions serves to preserve to a plaintiff rights that otherwise would be lost from a dismissal, which, although without prejudice, becomes *res judicata* of what that judgment actually decides. *Hea-*

*ly v. Atchison, Topeka & Santa Fe R.R. Co.*, 287 S.W.2d 813, 815 (Mo.1956); *Douglas v. Thompson*, 286 S.W.2d at 834.

It is explicit in *§ 538.255.5* that the dismissal without prejudice sanction for failure to file the health care provider affidavit is a dismissal of the *action*, and not merely the petition. It is a judgment that the action may not continue. The plaintiffs here have not sought an order for an extension of time to produce the affidavits as a response to the motion to dismiss, but stand on the right under the state and federal constitutions to maintain the action unencumbered by that requirement. It would be redundant as well as futile to put the plaintiffs to the precondition of a new petition. A dismissal without prejudice is the only sanction that *§ 538.225* allows for noncompliance with the affidavit condition. Unless an appeal lies from the judgment, the right to test the constitutionality of the statute that imposes it will be lost to the plaintiffs and the question—although bound to recur—will languish.

The judgment of dismissal without prejudice under *§ 538.225.5* is final and appealable. The holding to the contrary in *Mullins v. Miller*, 796 S.W.2d 119 (Mo.App. 1990) is overruled. This Court has jurisdiction. *Mo. Const., art. V, § 3*.

■ The defendants Doerhoff suggest a second impediment to our exercise of appellate jurisdiction. They cite *Rule 87.04* to require notice to the Attorney General of Missouri in any proceeding wherein a statute is alleged to be unconstitutional, and the neglect of the plaintiffs to comply although they seek to invalidate *§ 538.225*. They assert that "such failure raises a jurisdictional question." In support of the contention they mention, but without exposition, *Land Clearance for Redevelopment Authority of St. Louis v. City of St. Louis*, 270 S.W.2d 58 (Mo. banc 1954), and *Yellow Freight Systems v. Mayor's Comm'n. on Human Rights*, 737 S.W.2d 250 (Mo.App.1987).

*Rule 87.04* rescripts *§ 527.110*, RSMo 1986. The entirety of *Rule 87* and *Chapter 527*, of which *Rule 87.04* and *§ 527.110* are subparts, is entitled DECLARATORY

JUDGMENTS. The text of these provisions is drawn from and identical to *§ 11* of the UNIFORM DECLARATORY JUDGMENTS ACT. *See,* Unif. Declaratory Judgment Acts *§ 11,* 12 U.L.A. 516 (1975). The two cases cited by the defendants Doerhoff, as well as all of the Missouri cases that construe *Rule 87.04* are declaratory judgment actions. Indeed, every case that has dealt with that section of the uniform act, either as rule or statute and whether within or without Missouri, has involved only the *sui generis* declaratory judgment remedy. *See Rule 87.04* and Unif. Declaratory Judgments Act *§ 11,* 12 U.L.A. 516 (1975). In actions for declaratory judgment that challenge the constitutionality of a statute, our law follows the general rule that notice to the Attorney General is mandatory. *Land Clearance for Redevelopment Authority,* 270 S.W.2d at 63. This is not an action for declaratory judgment.

## II. THE CONSTITUTIONAL ISSUES

■ In the assessment and adjudication of a constitutional challenge to a statute, a court considers and interprets the purposes intended by the enactment. *Harrell v. Total Health Care, Inc.,* 781 S.W.2d 58, 61 (Mo. banc 1989). It is readily understood from the history and text of *Chapter 538* that the enactment is a legislative response to the public concern over the increased cost of health care and the continued integrity of that system of essential services. The effect intended for *§ 538.225* within that scheme is to cull at an early stage of litigation suits for negligence damages against health care providers that lack even color of merit, and so to protect the public and litigants from the cost of ungrounded medical malpractice claims. The preservation of the public health is a paramount end of the exercise of the police power of the state. *Craig v. City of Macon,* 543 S.W.2d 772, 774 (Mo. banc 1976); and *see Blue Cross Hosp. Service, Inc., v. Frappier,* 681 S.W.2d 925, 930 (Mo. banc 1985). The objective of the enactment—the continued integrity of the health care system—therefore, bespeaks a legitimate public purpose that is given account in the

assessment of the constitutional challenges. *Harrell,* 781 S.W.2d at 61.

## A. Right to Trial by Jury

■ *Article I, § 22(a)* of the Missouri Constitution provides that "the right to trial by jury as heretofore enjoyed shall be inviolate." That right was envisioned by the framers as "a free and unfettered right," the plaintiffs argue, and is restrained by the condition of *§ 538.225* of an affidavit on file with the court within ninety days after the petition is brought. That condition, that the plaintiff have in hand by then a written opinion of a qualified health care provider that the defendant health care provider deviated from the accepted standard of care and so caused the plaintiff's damages, they argue, is onerous to the constitutional guarantee. It unduly burdens the right by a "screening process" wherein the "merits of the cause must be determined by [a] health care professional before the [plaintiff] can submit the case to the jury." It is the "screening process" established at the earliest stage of the litigation, the argument concludes, which denied the plaintiffs their right to have the factual issues of their claim heard by the jury, and so violates *Article I, § 22(a)* of the Missouri Constitution.

The parties do not disagree that the right to trial by jury is preserved under this article to a proceeding for damages for medical malpractice. Nor do they dispute that the petition brought by the plaintiffs against the defendants falls within the ambit of *Chapter 538,* and so also the requirement of affidavit *§ 538.225.* Nor is there dispute that the allegations of negligence against the several health care provider defendants are of the kind that require the aid of expert medical testimony to prove the acceptable standard of professional care. In the absence of such expert opinion, the issue of medical malpractice from the breach of that standard of care simply cannot be made out. It will not go to the jury. *Swope v. Printz,* 468 S.W.2d 34, 39 (Mo.1971); *Yoos v. Jewish Hosp. of St. Louis,* 645 S.W.2d 177, 183 (Mo.App.1982).

A petition on file for ninety days, but without possibility of *prima facie* proof of malpractice for want of expert medical testimony, also will not go to the jury. Such a petition has no chance of success under the precedents and is subject to summary disposition. *See, Morley v. Ward,* 726 S.W.2d 799, 802 (Mo.App.1987). It lacks even color of merit and is frivolous. Thus, it is not the "screening" procedure of *§ 538.225* that impedes the progression of their petition to the jury, as the plaintiffs argue, but their failure to meet a requirement of substantive law. The affidavit condition of *§ 538.225* is a reasonable means to hinder a plaintiff whose medical malpractice petition is groundless from misuse of the judicial process in order to wrest a settlement from the adversary by the threat of the exaggerated cost of defense this species of litigation entails. It is an exercise of the police power rationally related to the end sought—the preservation of an adequate system of medical care for the citizenry—by the control of ungrounded medical malpractice claims. As such, the statute is valid and constitutional. *Blue Cross Hosp. Service,* 681 S.W.2d at 930.

■ The "screening" procedure *§ 538.-225* imposes on medical malpractice petitions, moreover, parallels the practice already prescribed for all civil actions, and is hardly more onerous to the right to trial by jury. *Rule 55.03* requires of the party or attorney the duty of reasonable inquiry that the petition or other paper filed "is well grounded in fact and is warranted by existing law." The signature on the paper filed constitutes a certificate of compliance with that duty. It certifies also that the filing is not for any "improper purpose [including] *needless increase in the cost of litigation." Id.* (emphasis added). Thus, a purpose of *Rule 55.03* is to prevent the burdensome cost of frivolous civil suits. *See, Dillard Dep't. Stores, Inc. v. Muegler,* 775 S.W.2d 179, 186 (Mo.App.1989). Sanctions for frivolous breach of *Rule 55.03* are mandatory and do not exclude dismissal of the action with prejudice. *See, American Inmate Paralegal Assoc. v. Cline,* 859 F.2d 59, 62 (8th Cir.), *cert. denied,* 488 U.S. 996, 109 S.Ct. 565, 102 L.Ed.2d 590 (1988).

Affidavit *§ 538.225* emulates that purpose in medical malpractice suits. It expects that a party who sues for the malpractice of a health care provider has by a reasonable inquiry come to a reasonable belief that the petition is warranted by the proof and the law. In those cases, nevertheless, where the allegations of malpractice notwithstanding, there is no opinion from a qualified expert of deviation from a standard of care so that the petition is not warranted, the affidavit section prescribes a procedure in the early stage of suit to detect that frivolousness. It meets, by the sanction of dismissal without prejudice, the needless toll of serious costs that the defense of suits of that kind threaten.

In response to the constitutional arguments against the statute, it is well to understand that *§ 538.225* enacts a *procedure* in suits for personal injury or death damages caused by negligent health care providers. It intends no change in our substantive medical malpractice law. Nor does the affidavit give discovery, since neither the identity of the expert nor the detail of the opinion rendered need be disclosed. The procedure allows the plaintiff with good cause an extension of time to comply, or to correct a defective affidavit already filed, or implicitly, to show that the medical malpractice the petition alleges is of that untypical kind that does not require proof of standard of care by expert opinion. *See, e.g., Null v. Stewart,* 78 S.W.2d 75, 78–79 (Mo.1934).

The "screening" procedure of *§ 538.225* and the dismissal without prejudice that culminates a noncompliance are less onerous to the right to trial by jury than a directed verdict or a summary judgment, neither of which are infringements of that constitutional guarantee. *Smith v. Glynn,* 177 S.W. 848, 849 (Mo.1915); *Finn v. Newsam,* 709 S.W.2d 889, 892–93 (Mo.App. 1986). These are final adjudications, whereas the dismissal without prejudice under *§ 538.225* saves the action for the plaintiff. *Rule 67.03. Section 538.225* does not violate *Article I, § 22(a)* of the Missouri Constitution.

The plaintiffs here cite two cases to sustain their position, *Simon v. St. Elizabeth Medical Center*, 3 Ohio Op.3d 164, 355 N.E.2d 903 (1976) and *Wright v. Central DuPage Hosp. Assoc.*, 63 Ill.2d 313, 347 N.E.2d 736 (1976), but without analysis or discussion. Each of these cases contested the constitutionality of legislative revision of the law of medical malpractice enacted in response to a perceived crisis. Neither case involved a provision comparable to *§ 538.225*, and neither bears relevantly to the issue presented here.

In *Simon*, the court found a compulsory arbitration provision unique to medical malpractice suits violated the right to trial by jury guaranteed by the Ohio Constitution. That provision allowed the arbitration decision to be introduced into evidence and the individual arbitrators to testify at the trial. The court found that although the procedure left open to a plaintiff the right to proceed to a trial by jury, it put "strings" on that right. The procedure effectively reduced the ability of a plaintiff to prove the case, because it left to the plaintiff to persuade the jury that the decision of the arbitrators was incorrect—"a task not easily accomplished in view of the added weight which juries have traditionally accorded the testimony of experts." *Simon*, 355 N.E.2d at 908. There is no arbitration provision in *Chapter 538*. Affidavit *§ 538.-225* adds no "strings" or burden on the ability of a plaintiff to prove a medical malpractice claim other than the burden the substantive law already prescribes.

In *Wright*, the court invalidated a legislative requirement as unconstitutional delegation of the judicial function to nonjudicial personnel. The medical malpractice act required a panel, composed of a judge, a lawyer and a physician, to review medical malpractice petitions and to determine liability and compensation. In that function, the lawyer and physician members exercised the same function as the judge and the nonjudicial members could make legal determinations contrary to those reached by the judge. The Supreme Court of Illinois determined that the statute unconstitutionally vested a judicial function in nonjudicial personnel. The court concluded also that since the unconstitutional review panel was "prerequisite to jury trial," that provision was unconstitutional as well as "an impermissible restriction to the right of trial by jury" guaranteed by the Illinois Constitution. *Wright*, 347 N.E.2d at 741. This procedure does not resemble affidavit *§ 538.225* nor intend its unobtrusive purpose.

*Section 538.225* does not violate *Article I, § 22(a)* of the Missouri Constitution.

## B. Right of Access to the Courts

■ *Article I, § 14* of the Missouri Constitution provides that "the courts of justice shall be open to every person ... and that right and justice shall be administered without sale, denial or delay." The plaintiffs argue that the "screening" process of *§ 538.225* that requires "a health care provider's written report" not only violates the guarantee that courts be open "without denial or delay," but also imposes an unreasonable precondition to free access to the courts. They cite *State ex rel. Cardinal Glennon Memorial Hosp. v. Gaertner*, 583 S.W.2d 107 (Mo. banc 1979).

*Cardinal Glennon* invalidated a statutory procedure for compulsory, albeit nonbinding, arbitration before a professional liability review board before a medical malpractice claim could be filed in any court within this state. It violated *art. I, § 14*, this Court ruled, to impose "a procedure as a precondition to access to the courts." *Id.* at 110. It rested on the rationale that such a period of enforced waiting before suit "necessarily destroyed the remedies which depended on obtaining personal service on defendants." The opinion distinguished the validity of a procedure where "the screening panel is convened *after* the court proceedings are commenced." *Id. Section 538.225*, of course, does not operate until after the petition is filed and the incidents of jurisdiction to adjudicate are met. Thus the concerns of *Cardinal Glennon* over the disadvantages to a plaintiff from a delayed suit do not apply to *§ 538.225*. The plaintiffs were not denied access to the courts in the constitutional sense by that procedure.

*Art. I, § 14* does not create rights, but is meant to protect the enforcement of rights already acknowledged by law. The right of access "means simply the right to pursue in the courts the causes of action the substantive law recognizes." *Harrell*, 781 S.W.2d at 62. The substantive law requires that a plaintiff who sues for personal injury damages on the theory of health care provider negligence prove by a qualified witness that the defendant deviated from an accepted standard of care. Without such testimony, the case can neither be submitted to the jury nor be allowed to proceed by the court. The affidavit procedure of *§ 538.225* serves to free the court system from frivolous medical malpractice suits at an early stage of litigation, and so facilitate the administration of those with merit. Thus, it denies no fundamental right, but at most merely "[re]design[s] the framework of the substantive law" to accomplish a rational legislative end. *Harrell* 781 S.W.2d at 62; *see also, Ortwein v. Schwab*, 410 U.S. 656, 659, 93 S.Ct. 1172, 1174, 35 L.Ed.2d 572 (1972). The affidavit procedure neither denies free access of a cause nor delays thereafter the pursuit of that cause in the courts. It is an exercise of legislative authority rationally justified by the end sought, and hence valid against the contention made here. *Blue Cross Hosp. Service*, 681 S.W.2d at 930; *see also, Thomas v. Fellows*, 456 N.W.2d 170, 173 (Iowa 1990).

## C. The Separation of Powers

*Article II, § 1* of the Missouri Constitution separates the executive, legislative and judicial powers into three distinct branches of state government. In that constitutional scheme, the plaintiffs argue, the determination of a meritorious cause of action is exclusively a judicial function. *Section 538.225* "invades the judicial function by having a health care provider rather than a judicial officer determine the validity of [a plaintiff's] cause of action." This procedure, the argument concludes, imposes an undue burden on the judicial system by a "mandatory nonjudicial screening system" on each medical malpractice claim, which can lead to the denial of relief, and so encroaches upon the inherent function of the judiciary to order the administration of justice and is unconstitutional.

The theme that undergirds the argument on this point undergirds the others, and is equally unavailing as a constitutional challenge. And the response to the argument is the same. The insistence that under *§ 538.225* a plaintiff may not proceed "[w]ithout the prior written determination of a health care provider effectively stating that [a plaintiff's] claim has merit" is gratuitous. It also slights the legitimate public policy that *Chapter 538* enacts. The written opinion affirmed in the affidavit functions not to determine that the medical malpractice claim has "merit," but that the claim is not frivolous. The sanction of dismissal without prejudice that culminates a noncompliance with *§ 538.225*, moreover, is a determination that under the substantive law of medical malpractice the petition cannot succeed, and so is frivolous. It is a judge that decides that the case may not proceed, not a health care provider.

In this respect, the affidavit procedure of *§ 538.225* does no more than aid the court in its inherent function to do those things necessary for the administration of justice in civil actions. It facilitates in medical malpractice actions the objective of *Rule 55.03* in all civil actions—the elimination from the court system of groundless suits. *Section 538.225* works to unburden rather than burden the administration of justice, contrary to argument, and so does not unconstitutionally encroach upon that inherent function of the judiciary. *State ex rel. Missouri Highway and Transp. Comm'n. v. McCann*, 685 S.W.2d 880, 884 (Mo.App. 1984).

In the exposition of this point, the plaintiffs once again allude to *Cardinal Glennon*, 583 S.W.2d at 107, not for the authority of its holding, but for the analogy of a "screening" process. It likens the requirement of a medical review board there to that of the written report of a health care provider here to restate and reargue, but in terms of separation of powers, the undue burden of such a procedure on a medical malpractice plaintiff's "full access to the

courts." It is an argument already fully answered.

The plaintiffs stake their contention that *§ 538.225* violates the constitutional separation of powers because it delegates the judicial power to health professionals on the decision of the Appellate Court of Illinois in *DeLuna v. St. Elizabeth's Hosp.,* 184 Ill.App.3d 802, 132 Ill.Dec. 925, 540 N.E.2d 847 (1989). *DeLuna* struck down a provision of the state's medical malpractice reform act. The statute required that in any action for medical malpractice the plaintiff attach to the complaint an affidavit that the plaintiff has consulted with a health professional in whose "determination" there is "reasonable and meritorious cause" for filing the action. The failure to comply was grounds for dismissal of the suit. There was provision for a ninety-day extension for the filing of the affidavit under certain circumstances. The court held the provision unconstitutional as a violation of the separation of powers since it delegated judicial authority to health professionals and invaded the power of courts to hear and determine cases.

Whatever the validity of that analysis on its own terms, there are fundamental differences between the role of the Illinois affidavit and the affidavit *§ 538.225* prescribes. The Illinois statute forecloses a plaintiff from a medical malpractice action unless the complaint is accompanied by an affidavit that the plaintiff has consulted with *a health professional in whose determination there is a reasonable and meritorious cause for the filing of the action* and the written report of the health professional disclosing the basis for that determination. A plaintiff under *§ 538.225*, by contrast, is free to file a medical malpractice suit first and then supply the affidavit before the expiration of ninety days. The affidavit, moreover, certifies that the plaintiff has the written opinion of a health professional that the defendant health provider failed to use the accepted standard of care and so caused the damages the petition claims. There is no requirement that

the written opinion be disclosed, nor even the basis for the professional opinion. Nor is there requirement—decisive to the *De-Luna* rationale of unconstitutionality—that the health professional determine in a written report that there is a reasonable and meritorious cause before the plaintiff may bring the action. *Id.* 540 N.E.2d at 851. In contrast, the affidavit under *§ 538.225* functions not to determine the merit of the action for filing, but that the action already filed is not frivolous.

*DeLuna,* in any event, is without authority as precedent even in Illinois, other than in the first district of the appellate court where the opinion was rendered. It had the disagreement of the second, third and fourth districts of the appellate courts of Illinois in decisions rendered on that issue before *DeLuna,* and the disapproval of the second district once again thereafter. *Bloom v. Guth,* 164 Ill.App.3d 475, 115 Ill.Dec. 468, 517 N.E.2d 1154 (2 Dist.1987); *Alford v. Phipps,* 169 Ill.App.3d 845, 119 Ill.Dec. 807, 523 N.E.2d 563 (4 Dist.1988); *Sakovich v. Dodt,* 174 Ill.App.3d 649, 124 Ill.Dec. 438, 529 N.E.2d 258 (3 Dist.1988); and *Premo v. Falcone,* 197 Ill.App.3d 625, 144 Ill.Dec. 32, 554 N.E.2d 1071 (2 Dist. 1990). These decisions all sustain the constitutionality of the Illinois statute. They find, as do we, that the purpose of that affidavit provision is to "eliminate frivolous lawsuits at the pleading stage," a legitimate governmental purpose the statute is "rationally related to achieving." [2] *Alford v. Phipps,* 523 N.E.2d at 567.

## D. The Other Constitutional Issue

▉▉▉▉ There remain the contentions that *§ 538.225* denies the plaintiffs due process of law and the equal protection of the laws under the state and federal constitutions. The plaintiffs argue that access to the courts for redress of medical malpractice injury is a "fundamental right" under the state constitution, so that the validity of that statute must be assessed in light of the "fundamental nature" of that right.

**2.** The review of *DeLuna* presently pends in the Supreme Court of Illinois. *See* 127 Ill.2d 614,

136 Ill.Dec. 583, 545 N.E.2d 107.

The denial of due process argument implicates the access to the courts value, and to that extent is redundant of *art. I, § 14.* Accordingly, it is answered by our response to the challenge to the validity of *§ 538.225* under that section of the constitution. *Strahler v. St. Luke's Hosp.,* 706 S.W.2d 7, 18 (Mo. banc 1986). We respond to the final challenge, that the affidavit section denies the plaintiffs the equal protection of the laws under both the state and federal constitutions.

■ The first principle of such an inquiry is that a duly enacted statute is presumed to be constitutional. That presumption obtains unless the statute clearly contravenes some constitutional provision. *Findley v. City of Kansas City,* 782 S.W.2d 393, 394 (Mo. banc 1990). Such a law is presumptively invalid because it impinges upon a substantive right or liberty conferred by the constitution, whether or not its purpose it to create any classifications. *Americans United v. Rogers,* 538 S.W.2d 711, 716 (Mo. banc 1976).

■ In terms of equal protection, a statute that neither creates suspect classifications nor impinges on a fundamental right will withstand constitutional challenge if the classification bears some rational relationship to a legitimate state purpose. *Winston v. Reorganized School Dist., R–2,* 636 S.W.2d 324, 327 (Mo. banc 1982). A *fundamental right,* under this analysis, is a right "explicitly or implicitly guaranteed by the Constitution." *San Antonio School Dist. v. Rodriguez,* 411 U.S. 1, 33–34, 93 S.Ct. 1278, 1296–97, 36 L.Ed.2d 16 (1972). They include the rights to free speech, to vote, freedom of interstate travel, the right to personal privacy and other basic liberties. *See, e.g., Kramer v. Union Free School Dist.,* 395 U.S. 621, 626, 89 S.Ct. 1886, 1889, 23 L.Ed.2d 583 (1969); *Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 1823–24, 18 L.Ed.2d 1010 (1967) and *Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969). A *suspect* classification is one whose purpose or effect is to create classes based on certain characteristic that are inherently suspect in a constitutional sense. *San An-*

*tonio School Dist. v. Rodriguez,* 411 U.S. at 61, 93 S.Ct. at 1311. They are classes, such as those based upon race, national origin or illegitimacy, which because of historical reasons, " 'command extraordinary protection from the majoritarian political process.' " *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 313, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976) (citation omitted).

■ In terms of equal protection, the presumption of constitutional validity vanishes when the purpose of the legislation is to create classes upon criteria that are inherently suspect or impinges upon a fundamental right. *San Antonio School Dist. v. Rodriguez,* 411 U.S. at 61, 93 S.Ct. at 1311. In such a case, the challenged state legislation is subjected to "searching judicial scrutiny." *Id.* at 40, 93 S.Ct. at 1300. A statute, such as *§ 538.225,* however, which neither touches a fundamental right nor burdens a suspect class, will withstand an equal protection challenge if the classification is rationally related to a legitimate state interest. *Id.; State Bd. of Registration for the Healing Arts v. Giffen,* 651 S.W.2d 475, 479 (Mo. banc 1983). Since the equal protection guarantee is directed against invidious discrimination, that "constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961); *see also Winston v. Reorganized School Dist. R–2,* 636 S.W.2d at 327. In this assessment, "States are not required to convince the courts of the correctness of their legislative judgments. Rather, 'those challenging the legislative judgment must convince the court the legislative facts upon which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.' " *Minneso-*

ta v. Clover Leaf Creamery Co., 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981) (quoting Vance v. Bradley, 440 U.S. 93, 111, 99 S.Ct. 939, 950, 59 L.Ed.2d 171 (1979)).

Thus, whether in fact the distinction § 538.225 works between the tort of medical malpractice and torts in general will promote the integrity of the health care system is not the question. It is enough to satisfy equal protection that the legislature could have reasonably decided that the early disposition of frivolous medical malpractice suits, those that ultimately must be dismissed for want of expert testimony, would ameliorate the cost and availability of health care services. Clover Leaf Creamery, 449 U.S. at 466, 101 S.Ct. at 725; see, State Bd. of Registration, 651 S.W.2d at 481. A party who challenges legislation under the equal protection clause may present facts or arguments to show that the classification as applied is not rational. United States v. Carolene Products Co., 304 U.S. 144, 153, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938). If the question of the legislative judgment remains at least debatable, the issue settles on the side of validity. Id. at 154, 58 S.Ct. at 784; Winston v. Reorganized School Dist., R–2, 636 S.W.2d at 327.

This Court has upheld against an equal protection challenge the constitutionality of a shorter statute of limitations for malpractice cases than for other torts. Laughlin v. Forgrave, 432 S.W.2d 308, 314 (Mo. banc 1968).

The classification § 538.225 imposes between medical malpractice torts and other torts is at least as rational.

The judgment of dismissal without prejudice is affirmed.

BLACKMAR, C.J., and ROBERTSON, RENDLEN, HIGGINS, COVINGTON and HOLSTEIN, JJ., concur.

BILLINGS, J., not sitting.

APPENDIX

Section 538.225, RSMo 1985:

1. In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or his attorney shall file an affidavit with the court stating that he has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable are directly caused or directly contributed to cause the damages claimed in the petition.

2. The affidavit shall state the qualifications of such health care providers to offer such opinion.

3. A separate affidavit shall be filed for each defendant named in the petition.

4. Such affidavit shall be filed no later than ninety days after the filing of the petition unless the court, for good cause shown, orders that such time be extended.

5. If the plaintiff or his attorney fails to file such affidavit the court may, upon motion of any party, dismiss the action against such moving party without prejudice.