Loye Dale **HILL**, Plaintiff,

v.

J. Scott **MORRISON**, Defendant.

No. 94–0516–CV–W–BC.

United States District Court,
W.D. Missouri,
Western Division.

Dec. 1, 1994.

## ORDER DENYING MOTION TO DISMISS

LARSEN, United States Magistrate Judge.

Plaintiff Loye Dale Hill filed this pro se diversity action against J. Scott Morrison, a psychiatrist.

Before the court is defendant's motion to dismiss the complaint for plaintiff's failure to file an affidavit of health care provider pursuant to Missouri Revised Statutes § 538.225 (1986). In his motion to dismiss, which was filed on September 16, 1994, and supplemented with additional suggestions on September 27, 1994, defendant states that under section 538.225, the affidavit was to have been filed on or before September 15, 1994, and that because it was not so filed, plaintiff's complaint should be dismissed. For the reasons set forth below, defendant's motion is being denied.

### I. BACKGROUND

Plaintiff is a citizen of Tennessee who is residing in the state of Missouri for the purpose of pursuing his education. Defendant is a Kansas citizen who has his place of business in Missouri. This court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

The facts as alleged in plaintiff's complaint are that defendant J. Scott Morrison, a board certified psychiatrist practicing in Kansas City, Missouri, prepared an inaccurate diagnostic report and that, as a result, plaintiff was denied disability and other benefits for which he believes himself eligible. Plaintiff seeks damages in the amount of $150,000.

### II. DISCUSSION

Missouri Revised Statutes § 538.225 requires that:

1. In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or his attorney shall file an affidavit with the court stating that he has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed

Loye Dale Hill, pro se.

Michael J. Furlong, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, Marcia Sue Cook, Blackwell, Sanders, Matheny, Weary & Lombardi, Overland Park, KS, for defendant J. Scott Morrison, MD, Bd. Certified Psychiatrist.

to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

2. The affidavit shall state the qualifications of such health care providers to offer such opinion.

3. A separate affidavit shall be filed for each defendant named in the petition.

4. Such affidavit shall be filed no later than ninety days after the filing of the petition unless the court, for good cause shown, orders that such time be extended.

5. If the plaintiff or his attorney fails to file such affidavit the court may, upon motion of any party, dismiss the action against such moving party without prejudice.

The enactment of this statute was a "legislative response to the public concern over the increased cost of health care and the continued integrity of that system of essential services." *Mahoney v. Doerhoff Surgical Services, Inc.*, 807 S.W.2d 503, 507 (Mo.1991) (en banc). The intended effect of section 538.225 is to "cull at an early stage of litigation suits ... against health care providers that lack even color of merit, and so to protect the public and litigants from the cost of ungrounded medical malpractice claims." *Id.*

Defendant states that this statute is applicable to the case before the court because federal courts sitting in diversity cases are bound by state statutes when deciding questions of substantive law.

In response to defendant's motion to dismiss, plaintiff states that requiring him to comply with section 538.225 prior to completion of discovery would be premature. Plaintiff does not contend that section 538.225 is

inapplicable to his claim, but nevertheless requests that the court not "adopt this state statute under Federal forum."

## A. Choice of law

The first question which must be addressed is whether, in this case involving only citizens of Tennessee and Kansas, the Missouri statute in question may properly be applied to plaintiff's claim.

■■■ A district court, sitting in diversity, must follow the choice-of-law approach prevailing in the state in which it sits. *Dorman v. Emerson Electric Company*, 23 F.3d 1354, 1358 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 428, 130 L.Ed.2d 341 (1994). For tort claims, Missouri courts apply the most-significant-relationship test as defined in the Restatement (Second) of Conflict of Laws § 145 (1971) (the Restatement). *Galvin v. McGilley Memorial Chapels*, 746 S.W.2d 588, 590 (Mo.Ct.App.1987). Sections 145 and 146 of the Restatement establish a presumption with respect to an action for personal injury that the state with the most significant relationship is the state where the injury occurred, absent an overriding interest of another state based on certain factors outlined in section 6 of the Restatement.[1] In this case, where the alleged harmful conduct and injury occurred in Missouri, and where the interest of the state of Missouri in "the increased cost of health care and the continued integrity of that system of essential services" within the state is clear, I see no overriding interest of either Kansas or Tennessee that would suggest that the laws of either of those states would govern. Therefore, I conclude that, to the extent state law governs on this issue, the case is governed by Missouri law.

1. Section 6 details the following factors to be considered when determining the proper choice of law: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability, and uniformity of result, and (g) ease in the determination and

application of the law to be applied. Restatement § 6. The section 6 factors must be evaluated taking into account the contacts listed in section 145 according to their relative importance to the particular issue: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.

## B. Applicability of Statute in Federal Court

The next question before the court is whether the specific Missouri statute pursuant to which defendant seeks the dismissal of plaintiff's claim is properly applied in a diversity proceeding in federal court. This question has not been addressed by the Eighth Circuit.

■ The Rules of Decisions Act provides that the "laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U.S.C. § 1652. In a line of cases beginning with *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the Supreme Court has set out the principles to be applied in determining whether a particular state law must be applied by a federal court sitting in a diversity case. Where the state provision directly collides with the plain meaning of a federal procedural statute or formal Rule of Procedure, the court analyses whether the rule is constitutional and, if a formal Rule of Procedure is involved, whether the Rule is authorized by the Rules Enabling Act, 28 U.S.C. § 2072. *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 27 n. 5, 108 S.Ct. 2239, 2242 n. 5, 101 L.Ed.2d 22 (1988); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749–50, 100 S.Ct. 1978, 1983–84, 64 L.Ed.2d 659 (1980); *Hanna v. Plumer*, 380 U.S. 460, 469–71, 85 S.Ct. 1136, 1142–43, 14 L.Ed.2d 8 (1965). When, however, there is no federal rule on point, the court must evaluate whether application of the state law would further the "twin aims of the *Erie* rule: discouragement of forum shopping and avoidance of inequitable administration of the laws." *Stewart*, 487 U.S. at 27 n. 6, 108 S.Ct. at 2243 n. 6; *Hanna*, 380 U.S. at 468, 85 S.Ct. at 1142.

■ I am aware of no federal rule which directly conflicts with section 538.225, nor has plaintiff suggested any. Rule 11(b), Federal Rules of Civil Procedure, provides that by filing a complaint or other pleading, an attorney or unrepresented party is certifying that to the best of that person's knowledge, information and belief, formed after reasonable inquiry, "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; ..." The state statute goes beyond Rule 11 and its analogous state rule, Rule 55.03, to require an affidavit that the plaintiff has, in fact, obtained a written opinion which states that the defendant failed to use the appropriate standard of care and that the failure resulted in plaintiff's claimed damages. Just as section 538.225 and Missouri Rule 55.03 can both apply in state court without conflict, so too both section 538.225 and Rule 11 can be given effect in federal court in a diversity action.

■ That being the case, the court must examine the statute in light of the "twin aims of the Erie rule." Because of the need for an expert opinion in most medical malpractice and negligence cases, it is unlikely that application of section 538.225 in federal diversity actions will encourage forum-shopping in cases of well-founded lawsuits. Nevertheless, failure to apply the state statute would without doubt encourage forum-shopping in connection with those lawsuits the statute was intended to identify and discourage, that is, those lacking even color of merit.

Failure to apply the state statute would also result in inequitable administration of the law by compelling a health care provider sued in federal court to forego the protections afforded by section 538.225 from frivolous or unmerited lawsuits, protections which would be available except for the circumstance of diversity of citizenship.

Although the Eighth Circuit has not addressed whether section 538.225 must be applied in federal diversity actions, the United States District Court for the Eastern District of Missouri dismissed a diversity lawsuit seeking damages for medical malpractice because the plaintiff had failed to comply with a Missouri statute, now repealed, which required a review of a claim by a professional liability review board before the filing of any action alleging malpractice, errors, omissions or other professional negligence. *Wells v.*

*McCarthy,* 432 F.Supp. 688 (E.D.Mo.1977). The court concluded, after a discussion of *Erie* and its progeny, that had the suit been filed in state court, plaintiff's complaint would be dismissed for failure to comply with the statute, and that "the same result should obtain when suit is filed in federal court." *Id.* at 689. The court stated further that if it were to rule otherwise, discrimination in favor of nonresidents would result. *Id.*

The District Court for the Southern District of Iowa has applied an Iowa rule requiring a plaintiff in a professional liability case to certify to the court and all other parties the name of each expert witnesses, the expert's qualifications and the purpose for calling the expert, within 180 days of the defendant's answer, finding that failure to require the early designation of experts would encourage forum-shopping and result in inequitable application of the law. *Connolly v. Foudree,* 141 F.R.D. 124 (S.D.Iowa, 1992).

Numerous other federal courts have upheld application in federal diversity cases of state laws requiring screening or arbitration of malpractice claims before they may be tried. *See, e.g., Bledsoe v. Crowley,* 849 F.2d 639 (D.C.Cir.1988) (Md. law); *Seoane v. Ortho Pharmaceuticals, Inc.,* 660 F.2d 146, 149 n. 4 (5th Cir.1981) (La. law); *Feinstein v. Massachusetts Gen. Hosp.,* 643 F.2d 880, 883–90 (1st Cir.1981) (Mass. law); *DiAntonio v. Northampton–Accomack Memorial Hosp.,* 628 F.2d 287, 290–91 (4th Cir.1980) (Va. law); *Davison v. Sinai Hosp. of Baltimore, Inc.,* 617 F.2d 361 (4th Cir.1980) (Md. law); *Edelson v. Soricelli,* 610 F.2d 131, 133–41 (3d Cir.1979) (Pa. law); *Hines v. Elkhart Gen. Hosp.,* 603 F.2d 646 (7th Cir.1979) (Ind. law); *Woods v. Holy Cross Hosp.,* 591 F.2d 1164, 1168–69 n. 6 (5th Cir.1979) (Fla. law). *But see Seck v. Hamrang,* 657 F.Supp. 1074 (S.D.N.Y.1987); *Hibbs v. Yashar,* 522 F.Supp. 247 (D.R.I.1981); *Wheeler v. Shoemaker,* 78 F.R.D. 218 (D.R.I.1978).

## III. CONCLUSIONS

In light of the authorities cited above and because failure to apply the state statute would encourage forum shopping and promote the inequitable administration of the laws, the state law must be applied.

Section 538.225 provides that the "affidavit shall be filed no later than ninety days after the filing of the petition unless the court, for good cause shown, orders that such time be extended." At the time plaintiff's complaint was filed he had no way to know whether the court would apply the state statute, and informed the court at a hearing on another matter that he did not, in fact, know of the existence of the statute. Defendant did not raise this matter with the court until after the 90–day deadline had passed. Under these circumstances, good cause exists for extending the time period for filing the affidavit. Accordingly, it is

ORDERED that defendant's motion to dismiss is denied. It is further

ORDERED that the deadline for the filing of the affidavit required pursuant to section 538.225 is extended to sixty days after the filing of this order. It is further

ORDERED that all discovery in this case is stayed pending further orders of this court.